UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO ERNESTO GONZALEZ-SANCHEZ,<br><br>Defendant. | Case No.1:19-cr-00051-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendant Eduardo Ernesto Gonzalez-Sanchez's Motion to Dismiss the Indictment (Dkt. 21). For the reasons explained below, the Court will grant the motion and dismiss the indictment.

## BACKGROUND

Gonzalez-Sanchez is charged with a single count of illegal reentry. The indictment alleges that Gonzalez-Sanchez was removed from the United States in 2015, but the motion focuses on a 2006 removal proceeding. As defendant explains, the 2015 removal proceeding was a reinstatement of the 2006 removal and as such "is only as good as the 2006 removal; it cannot independently sustain an illegal reentry prosecution . . . ." *See Motion,* Dk. 21 at 2 n.2 (citing *United*

States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010)).

The 2006 removal proceedings began on January 14, 2006, when immigration authorities served Gonzalez-Sanchez with a Notice to Appear. The notice ordered Gonzalez-Sanchez to appear before an immigration judge in El Centro, California at a date and time "to be set." The removal hearing took place roughly three weeks later, on February 6, 2006.

Gonzalez-Sanchez's hearing began as a group session. The Immigration Judge (IJ) addressed several individuals who had been arrested and charged with entering the United States illegally. The IJ explained the charges and advised the group as to the purpose of the hearing:

> The purpose of today's hearing is very simple. It's to decide if this charge is true or false. If the charge is false and you are entitled to be in the United States, I'll terminate the proceedings and I'll dismiss the case. On the other hand, if the charge is true, I will consider you for any type of relief or permission available to let you stay here."

*Feb. 6, 2006 Tr.*, Dkt. 27-1, at 4:19-25. The IJ then explained three fundamental rights to the group – the right to an attorney, the right to submit evidence, and the right to appeal.

After concluding the group session, the IJ conducted a series of individual hearings. When it was Gonzalez-Sanchez's turn, the IJ asked if he understood the purpose of the hearing and if he wanted to proceed that day. Gonzalez-Sanchez answered affirmatively and then admitted that he was a citizen and native of

Mexico. Responding to further questioning, Gonzalez-Sanchez told the IJ he was married; his wife had a green card; he and his wife had two young children (both born in the United States); his father lived in the United States as a permanent resident; and his mother lived in Mexico.

After ascertaining this information, the IJ engaged in this exchange with the government's lawyer and Gonzalez-Sanchez:

| | |
|---|---|
| COURT: | What's the government have regarding cancellation for non-permanent residence, adjustment of status. ***It depends on if the marriage is valid if he can immigrate through the father (inaudible) voluntary return.*** Any evidence you have? |
| KATAVIO: | Other than it looks like he's been arrested three times by border patrol and he has a conviction up in Idaho for careless driving. |
| COURT: | Mr. Sanchez, have you been arrested by immigration authorities three times? |
| GONZALEZ: | Yes. |
| COURT: | And each time, were you returned to Mexico? |
| GONZALEZ: | Yes. |
| COURT: | Do you have a conviction for careless driving in Idaho? |
| GONZALEZ: | Yes, but it's all been resolved. |
| COURT: | Here's the situation in your case, sir. You may qualify for two types of immigration relief or three immigration leaves or pardons. One is called cancellation of removal for permanent residence. That one I'm not sure. You have to have 10 years here continuously. I'd have to see how it was you were moved to the United States previously but it's a possibility. It's based |

| | |
|---|---|
| | upon hardship to your wife and child and parent. The other one is adjustment of status which I'd have to figure out if the marriage is valid. Has your wife filed to immigrate here? |
| GONZALEZ: | No. |
| COURT: | I'd have to figure out if the marriage is valid and also take a look at the date that your father filed for you. It's possible, Mr. Katavio (phonetic), that if he can immigrate through the father because he's married, child of a permanent resident. He may be able to switch that priority date to the wife if she is a permanent resident. I don't know. There could also be 245(i) problems although they (inaudible) '95. ***Then there's also the possibility of voluntary return but I'd like to see more about the Idaho conviction before I make a decision on that. So there's three possible immigration pardons or reliefs available, two of which may qualify for permanent residence but I need more information before I can make a decision on those***. If you decide you don't want to, you can waive your right to apply for them and you can get deported but if you do that, you will lose the right to apply for cancellation removal. You can do that from the outside so you would not be able to get a green card through that particular relief and it may also affect your ability to adjust your status through your wife or father and become a permanent resident through them if you're deported. ***And then the voluntary departure, you also wouldn't be able to apply.*** If you're interested applying for any of these reliefs, this is the time and place. If you don't want to apply for them, I can order you removed and deported but you would lose your right to apply for those and try to immigrate through those reliefs. Do you understand? |
| GONZALEZ: | Yes. |
| COURT: | Any questions? |
| GONZALEZ: | No. |

| | |
|---|---|
| COURT: | Okay. And based on the evidence presented, I'm going to find – again, do you want to apply for any of those reliefs? |
| GONZALEZ: | No. Deport. |
| COURT: | Anything else you want to present, sir? |
| GONZALEZ: | No. |
| COURT: | Based on the evidence presented, ***I'm going to find that you knowingly, voluntarily, intelligently waived your right to apply for*** cancellation removal, for non-permanent residence, adjustment of status, ***all forms of voluntary departure.*** I don't see any other reliefs available to you. So I'm going to order the government to remove you and deport you to Mexico. Mr. Gonzalez, do you wish to appeal? |
| GONZALEZ: | No. |

*Id.* at 13:11 to 16:9 (emphasis added).

After this exchange, the IJ ordered Gonzalez-Sanchez deported to Mexico, and Gonzalez-Sanchez did not appeal. In his current motion, Gonzalez-Sanchez says the IJ violated his due process rights by failing to meaningfully advise him regarding his eligibility for pre-hearing voluntary departure and by failing to give him a genuine opportunity to apply for that relief.

## DISCUSSION

### 1. The IJ's Subject-Matter Jurisdiction

As a threshold matter, Gonzalez-Sanchez argues that the IJ lacked jurisdiction over his removal proceedings because the Notice to Appear did not

contain a specific date and time for the hearing. The Ninth Circuit's recent decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019) forecloses this argument. There, the Ninth Circuit held that an IJ had jurisdiction over removal proceedings even though the Notice to Appear lacked a date and time for the removal hearing.

Gonzalez-Sanchez raises several arguments as to why *Karingithi* was wrongly decided. But "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). The Court thus concludes that the IJ had subject-matter jurisdiction over the 2006 removal proceeding.

2. **Due Process**

   **A. Governing Legal Standards**

The Due Process Clause of the Fifth Amendment requires that an alien charged with a violation of 8 U.S.C. § 1326 be given an opportunity to collaterally challenge the deportation proceedings underlying the charge. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). Accordingly, a defendant may collaterally attack his underlying removal order as violative of due process. *See* 8 U.S.C. § 1326(d).

To prevail, Gonzalez-Sanchez must demonstrate (1) the "exhaustion of any

administrative remedies that may have been available to seek relief against the order," (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010). An underlying deportation order is "fundamentally unfair" if (1) Gonzalez-Sanchez's due process rights were violated by defects in his underlying deportation proceeding, and (2) Gonzalez-Sanchez suffered prejudice as a result of the defects. *Id.*

An IJ's failure to inform an alien of his eligibility to apply for relief "relieves the alien of the burden of proving exhaustion of administrative remedies" because the waiver of the administrative appeal is "insufficiently considered and intelligent." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). Similarly, it also proves the denial of a meaningful opportunity for judicial review because an alien has no opportunity to appeal the denial of a right he was not made aware of. *Id.* Thus, if Gonzalez-Sanchez establishes that his removal proceedings were fundamentally unfair, this also satisfies his obligation to demonstrate exhaustion of administrative remedies and deprivation of judicial review. *Id.*

B.  Analysis

"[W]here the record contains an inference that the petitioner is eligible for

relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). This requirement, according to the Ninth Circuit, is "mandatory." *Id.* Here, there was at least an inference – or a "reasonable possibility" – that Gonzalez-Sanchez was eligible to apply for pre-hearing voluntary departure: (1) he had never been convicted of an aggravated felony; (2) he was not involved in terrorist activity; and (3) he had never received a voluntary departure. *See* 8 U.S.C. § 1229c(a)(1), c(c); 8 C.F.R. § 1240.26(a) & (b); *see also United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). Given this, the IJ was required to advise Gonzalez-Sanchez of his eligibility for voluntary departure and to give him an opportunity to apply for that form of relief.

There are several Ninth Circuit decisions holding that an IJ violates an alien's due process rights by failing to meaningfully advise an alien about his eligibility for voluntary departure and allow the alien a genuine opportunity to apply for that form of relief.[1] In *United States v. Melendez-Castro*, 671 F.3d 950,

---

[1] See the three representative cases described next, plus these cases: *United States v. Rodriguez-Arroyo*, 467 Fed. Appx. 746, 747 (9th Cir. 2012) (unpublished decision) (alien deprived of due process when although the IJ advised of the availability of voluntary departure, the alien "never had a genuine opportunity to apply for voluntary departure or present evidence of the factors favoring this relief"); *United States v. Frias-Flores*, 425 Fed. Appx. 640 (9th Cir. 2011) (unpublished decision) (IJ's failure to weigh or hear evidence on pre-conclusion voluntary departure claim rendered the removal order constitutionally defective).

(9th Cir. 2012), for example, the Ninth Circuit found a due process violation when the IJ first told an alien he was eligible for voluntary departure and "almost in the same breath . . . told him that he would not get the relief if he applied for it because he had a criminal record." *Id.* at 954. The panel observed that "[i]t is no wonder that he did not formally apply," and held that this process violated the defendant's due process right. *Id.*

In *United States v. Basulto-Pulido*, 219 Fed. Appx. 717, 718 (9th Cir. 2007) (unpublished decision), the court found a due process violation where the defendant was eligible for pre-hearing voluntary departure, but the IJ failed to explain what voluntary departure was and failed to provide him with an opportunity to apply for it.

And in *Zamudio-Pena v. Holder*, 333 Fed. Appx. 165, 167-68 (9th Cir. 2009) (unpublished decision), the IJ informed members of a group, including Mr. Zamudio-Pena, that they "may be eligible for the relief of voluntary departure," and she went on to explain the requirements for pre-hearing departure. "However, the IJ failed to advise the group of the differences in timing and eligibility between pre-hearing and post-hearing voluntary departure. In doing so, the IJ also failed to inform Zamudio–Pena that if he waited to request voluntary departure until his removal proceeding concluded, then he would be subject to more stringent requirements and could very well be ineligible for post-hearing voluntary

departure." *Id.* at 167. The Ninth Circuit held that "[t]he IJ's failure to properly advise Zamudio-Pena of his apparent eligibility for pre-hearing voluntary departure and of the differences between pre-hearing and post-hearing voluntary departure violated his right to procedural due process." *Id.*

The government rightly points out that the facts in these decisions don't line up exactly with the facts here. But one of the central teaching that emerges is that for an IJ to provide meaningful advice to aliens in Gonzalez-Sanchez's situation, the IJ must at least explain what voluntary departure is, and how the alien might qualify. Here, the IJ fleetingly alluded to voluntary departure but he did not meaningfully explain what it was, or what Gonzalez-Sanchez would have to show to qualify for pre-hearing voluntary departure. Instead, the IJ just said he would need to see more about Gonzalez-Sanchez's careless driving conviction before he decided.

Based on this record, the Court concludes that the IJ did not meaningfully advise Gonzalez-Sanchez about his eligibility for pre-conclusion voluntary departure. Rather, given what occurred during the hearing, it would have been up to Gonzalez-Sanchez to figure out what form of relief he may have been eligible for. And as this Court has previously observed, there is a profound difference between (a) asking an alien to figure out what relief he may be entitled to and (b) identifying that relief for the alien. *See United States v. De la Torre-Hernandez*,

No. 1:17-cr-338-BLW, 2018 WL 3058857, at *2 (D. Idaho. June 20, 2018) (dismissing illegal reentry indictment based on the IJ's failure to meaningfully advise the defendant about his eligibility for pre-conclusion voluntary departure). In sum, the Court concludes that Gonzalez-Sanchez was deprived of due process during the 2006 hearing. This defect in the hearing exempts Gonzalez-Sanchez from the exhaustion requirement and renders the hearing fundamentally unfair.

The final question is whether Gonzalez-Sanchez has established prejudice. *See* 8 U.S.C. § 1326(d)(3); *United States v. Raya-Vaca*, 771 F.3d 1195, 1206 (9th Cir. 2014). He has.

To show prejudice, a defendant "must demonstrate that he had plausible grounds for relief from deportation . . . ." *United States v. Bustos-Ochoa*, 704 F.3d 1053, 1056 (9th Cir. 2012). Here, Gonzalez-Sanchez says he satisfied the requirements for pre-hearing voluntary departure. He also says the IJ likely would have granted that relief, given that his only stated concern at the hearing related to that careless driving conviction. Gonzalez-Sanchez explains that that conviction was not disqualifying. *See Motion*, Dkt. 21, at 19-20. On facts, the Court easily concludes that it is at least plausible that Gonzalez-Sanchez would have been granted voluntary departure, and that he has therefore suffered prejudice.

Having concluded that Gonzalez-Sanchez's due process rights were violated, and that he suffered prejudice, the Court will dismiss the indictment.

# ORDER

**IT IS ORDERED that** Defendant's Motion to Dismiss the Indictment (Dkt. 21) is **GRANTED**. The Indictment (Dkt. 15) is therefore **DISMISSED.**

DATED: June 27, 2019

B. Lynn Winmill
U.S. District Court Judge